## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH

| | | |
|---|---|---|
| PAUL DAVID WEIMER, | ) | Civil Action No. 2: 20-cv-0781 |
| | ) | |
| Petitioner, | ) | Magistrate Judge Patricia L. Dodge |
| | ) | |
| v. | ) | |
| | ) | |
| MARK CAPOZZA, Superintendent, | ) | |
| SCI Fayette; JOSH SHAPIRO, PA Attorney | ) | |
| General; and STEPHEN A. ZAPPALA, | ) | |
| JR., District Attorney of Allegheny County, | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM OPINION</u>

Pending before the Court[1] is the counseled Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed on behalf of Paul David Weimer ("Petitioner"), a state prisoner in the custody of the Pennsylvania Department of Corrections. (ECF 20). He is challenging the April 3, 2018, Judgments of Sentence imposed on him by the Court of Common Pleas of Allegheny County at Criminal Case Nos. CP-02-CR-0011522-2010, CP-02-CR-0011523-2010, and CP-02-CR-0011535-2010. For the reasons below, the Court will deny Petitioner's request for an evidentiary hearing, will deny the Amended Petition, and will deny a certificate of appealability as to each claim.

### I.    Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment. It permits a federal court to grant a state

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment. (ECF 2 and 8).

prisoner the writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a). Errors of state law are not cognizable in a federal habeas action. *Id.*; see, *e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Indeed, the Court is bound by the state courts' determinations of state law. *See, e.g.*, *Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle*, 502 U.S. at 67-68).

It is Petitioner's burden to prove that he is entitled to the writ. 28 U.S.C. § 2254(a)*; see, e.g.*, *Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017). There are other prerequisites that he must satisfy before he can receive habeas relief on his claims. For example, the burden imposed on him by the standard of review enacted by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (which is discussed below). But ultimately, Petitioner cannot receive federal habeas relief unless he establishes that he is in custody in violation of his federal constitutional rights. 28 U.S.C. § 2254(a); *see, e.g.*, *Vickers,* 858 F.3d at 849.

## II.    Relevant and Procedural Background[2]

This contentious case has an extensive and complicated history. On August 5, 2010, Petitioner was arrested and eventually charged in four separate Informations, with a total of twenty-one counts encompassing Rape, Involuntary Deviate Sexual Intercourse, Statutory Sexual Assault, Unlawful Contact with a Minor, Endangering the Welfare of a Child, False Imprisonment,

---

[2] Respondents electronically filed as exhibits to their Answer (ECF 22) relevant parts of the state court record. For ease of reference, the Court uses the page numbers from the CM/ECF header. Respondents have also submitted a hard copy of the Court of Common Pleas' file for Petitioner's criminal case, including the transcripts for the trial proceedings (T12-1172, dated August 15, 2011 through August 18, 2011) (cited as N.T.); the verdict (T12-0671, dated August 18, 2011); the SVP Hearing and Sentencing (T12-0984, dated March 13, 2012) (cited as Sent.T.); the resentencing hearing (T18-0990, dated April 3, 2018) (cited as Resent.T.); and the *Grazier* Hearing (T19-2235, dated April 8, 2019) (cited as *Grazier* Hrg. T.).

Corruption of Minors, and Furnishing Liquor to Minors in relation to various incidents with four young men, identified as J.C., J.D., R.Z., and M.G., who either lived with or visited Petitioner at his home. The procedural history of this case was recounted by the Superior Court in its Memorandum affirming the Judgments of Sentence:

> [Weimer, who was forty years old,] was arrested on 8/5/10 and eventually charged, regarding [J.D.] at 11535-2010, with involuntary deviate sexual intercourse ("IDSI"), unlawful contact with the minor, statutory sexual assault, indecent assault, furnishing liquor to minors, and two counts of corruption of minors; he was charged regarding [J.C.] at 11524-2010, with unlawful contact with a minor, corruption of minors and open lewdness; regarding [R.Z.], he was charged at 11522-2010 with two counts of rape, IDSI, unlawful contact with a minor, two counts of statutory sexual assault, endangering the welfare of children, corruption of minors, and furnishing liquor to minors; regarding [M.G.], he was charged at 11523-2010 with IDSI, indecent assault, endangering the welfare of children, and corruption of minors.
>
> . . .
>
> At the conclusion of the jury trial, [Appellant] was acquitted of all charges regarding [J.C.]; regarding [J.D.], he was convicted of furnishing liquor to minors, unlawful contact with a minor and two counts of corruption of minors, and acquitted of IDSI, statutory sexual assault and indecent assault; regarding [R.Z.], he was convicted of IDSI, unlawful contact with a minor, two counts of statutory sexual assault, endangering the welfare of children, corruption of minors, furnishing alcohol to minors, and acquitted of two counts of rape; regarding [M.G.], he was convicted of IDSI, indecent assault, endangering the welfare of children, and corruption of minors.

*Commonwealth v. Weimer*, No. 1331 WDA 2012, slip. op. (Pa. Super. Ct. Aug. 1, 2013) (ECF 22-1 at pp. 383-84).

## A.     State Court Proceedings

### 1.     Pre-Trial and Trial

Throughout the pretrial and trial proceedings, Petitioner was represented by the Office of the Public Defender of Allegheny County. Attorney Michelle L. Collins entered her appearance on November 5, 2010.  "[B]ut prior to trial, [Petitioner] became dissatisfied with her personally and sent her a letter demanding that she withdraw.  Attorney Collins did not withdraw but instead

transferred the case to another Public Defender, Carrie Allman, Esquire." PCRA Trial Court 1925(a) Opinion, No. 20101122, 20101123, 20101125, slip op. (C.P. Allegheny, Oct. 13, 2016) (ECF 22-1 at p. 783). Attorney Carrie L. Allman entered her appearance on April 8, 2011.

A week later, Petitioner, represented by Attorney Allman, appeared before the Honorable Donna Jo McDaniel[3] and proceeded to a jury trial on Case Nos. 201011522, 201011523, 201011524, and 201011535.[4]   Assistant District Attorney Patrick Schulte represented the Commonwealth. The Commonwealth and defense advanced two radically different versions of events.[5]  The Commonwealth's position was that Petitioner's "house of cards, [was] a house built out of an unbridled desire to have oral and anal sex with teenage boys," N.T. at p. 18, which was "a breeding ground for child molestation." N.T. at p. 19. Petitioner testified that he never had or asked for oral or anal sex with any of his accusers. N.T. at pp. 565, 566, 567, 571.

At the close of the Commonwealth's case, the trial court granted the defense Motion for Judgment of Acquittal at the false imprisonment charge at Count 8 of CP-02-CR-0011522-2010. (N.T. at pp. 409-11). On August 18, 2011, the jury returned these verdicts:

> At CP-02-CR-00011522-2010 (charges regarding R.Z.): Guilty of the following: Counts 2 – IDSI with a victim under the age of sixteen; Count 4 – Unlawful Contact with a Minor under the age of fourteen; Count 5 – Statutory Sexual Assault with a victim under the age of sixteen; Count 6 – Statutory Sexual Assault of a fourteen year old victim; Count 7 – Endangering the Welfare of Children; Count 9 – Corruption of Minors, and Count 10 – Selling or Furnishing Alcohol to Minors. Not Guilty of Counts 1 and 3 – Rape;
> At CP-02-CR-00011523-2010 (charges regarding M.G.): guilty at all counts;

---

[3] Throughout the Amended Petition, and supporting documents, Petitioner has incorrectly spelled the trial court judge's surname as "McDaniels." The Court will refer to the trial court judge by her correct surname "McDaniel."

[4] The four cases were consolidated for trial purposes.

[5] This Court's role is not "to determine the veracity of either account. Rather, we are confined to ascertaining whether any constitutional error occurred at [Petitioner's] trial." *Lambert v. Blackwell*, 387 F.3d 210, 220 (3d Cir. 2004).

At CP-02-CR-00011524-2010 (charges regarding J.C.): not guilty at all counts; and

At CP-02-CR-00011535-2010 (charges regarding J.D.): Guilty of the following: Count 2 – Unlawful Contact with a Minor; Counts 4 and 5 – Corruption of Minors; and Count 7 – Selling or Furnishing Alcohol to Minors.  Not Guilty of Count 1 – IDSI; Count 3 – statutory sexual assault; and Count 6 – indecent assault.

Sentencing was postponed for the preparation of a presentence report and a determination as to whether Petitioner should be classified as a sexually violent predator ("SVP").  Before sentencing, Attorney Allman sought to withdraw as counsel due to a conflict with Petitioner.  The trial court granted this request after Attorney Lea T. Bickerton entered her appearance as privately retained counsel.  On March 13, 2012, Petitioner, with Attorney Bickerton, appeared for his SVP and sentencing hearing.  The trial court determined Petitioner met the criteria to be classified as a SVP and proceeded to sentencing.  (S.T. at pp. 24-25).  Petitioner received an aggregate sentence of 25 to 50 years' incarceration, that included mandatory sentences:

At CP-02-CR-00011522-2010 (charges regarding R.Z.):
Count 2 – IDSI: a term of ten (10) to twenty (20) years of incarceration;

At CP-02-CR-00011523-2010 (charges regarding M.G.):
Count 1 – IDSI: a term of ten (10) to twenty (20) years of incarceration to be served consecutive to Count 2 of CP-02-CR-00011522-2010; and

At CP-02-CR-00011535-2010 (charges regarding J.D.):
Count 2 – Unlawful Contact with a Minor: five (5) to ten (10) years' incarceration to be served consecutive at CP-02-CR-00011523-2010.

No other penalties were imposed. As a result of being classified a SVP, Petitioner was subject to lifetime reporting requirements upon his release from incarceration.  At the end of the sentencing hearing, Attorney Bickerton moved to withdraw as counsel.  That request was granted and Attorney Scott Coffey was appointed to represent Petitioner in the appeal process.  Attorney Coffey filed post-sentence motions.  The court granted in part the post-sentence motions, granting two additional days of credit to Petitioner and denied the post-sentence motions in all other

respects.

### 2.    Direct Appeal

Petitioner, through Attorney Coffey, filed a direct appeal with the Superior Court of Pennsylvania, in which he raised these three claims:

> 1.    The trial court erred in denying Petitioner's sentencing motions since Petitioner's convictions regarding victims R.Z, M.G., and J.D. were against the weight of the evidence.
>
> 2.    The trial court erred in denying Petitioner's post-sentencing motions since Petitioner's aggregate sentence of 25-50 years' imprisonment was manifestly excessive due to the imposition of three consecutive sentences, the trial court failed to state adequate reasons on the record for each of the two IDSI . . . and on the unlawful conduct with a minor . . . sentences, the trial court failed to state adequate reasons on the record for the imposition of sentences above the aggravated range for each of the two IDSI convictions (minimum sentences of 10 years' imposed on each, but the aggravated range was 7.50 years), and each of the two IDSI and one unlawful search sentences were each excessive.
>
> 3.    The trial court erred in denying Petitioner's post sentencing motions since the evidence was insufficient to convict Petitioner of corruption of minors, count 4, and count 2, unlawful contact with a minor at 11535-2010 (victim J.D.).

Pet's Br. (ECF 22-1 at p. 305).

After briefing, the Superior Court denied Petitioner's claims on the merits and affirmed Petitioner's judgments of sentence. *Commonwealth v. Weimer*, No. 1331 WDA 2012, slip op. (Pa. Super. Ct. Aug. 1, 2013) (*Id*. at pp. 383–396). Petitioner filed a petition for allowance of appeal, which was denied by the Supreme Court of Pennsylvania. (*Id*. at p. 397). He did not file a petition for a writ of certiorari with the Supreme Court of the United States.

### 3.    PCRA Proceedings

Unsuccessful on direct appeal, Petitioner next sought relief under the PCRA. On April 7, 2014, he filed a timely *pro se* Motion for Post Conviction Collateral Relief ("PCRA Petition") and Memorandum of Law in Support of the PCRA Petition. The Memorandum of Law

is 103 single-spaced typewritten pages, has 41 numbered exhibits totaling approximately 100 pages, and raises numerous issues, many of which had multiple sub-claims.[6]  The trial court, now presiding as the PCRA court, appointed Attorney Thomas N. Farrell to represent Petitioner through his PCRA proceedings. (ECF 22-1 at p. 473).  On April 9, 2014, Attorney Farrell entered his appearance on behalf of Petitioner. (*Id.* at p. 474).

After several extensions were requested and granted, on June 16, 2015, Attorney Farrell filed an Amended PCRA Petition, raising these six claims:[7]

1.      Trial Counsel was ineffective for failing to file a Motion to Withdraw as Counsel as demanded by Petitioner.

2.      Trial Counsel was ineffective for failing to properly argue that the evidence should be suppressed in violation of Article 1, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution.

3.      Trial Counsel was ineffective by failing to act diligently and failing to zealously present a defense.

---

[6] The PCRA Petition and Memorandum in Support were not in the electronic record provided by Respondents, but the original is in the state court record.

[7] Despite being represented by counsel, Petitioner filed multiple *pro se* motions and pleadings, including a motion to exclude the Commonwealth's answer, supplemental PCRA petitions, objections to the counseled Amended PCRA Petition, and motions seeking the withdrawal of PCRA counsel as well as the recusal of the PCRA judge.  The documents were processed in accordance with Pennsylvania Rule of Criminal Procedure 576(A)(4), which instructs that "when a defendant is represented by an attorney, if the defendant submits for filing a written motion, . . ., not signed by the defendant's attorney, the clerk of courts shall accept it for filing, time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and place the documents in the criminal case file.  A copy of the time stamped document shall be forwarded to the defendant's attorney and the attorney for the Commonwealth."  *See* Pa.R.Crim.P. 576(a)(4).

"There is no constitutional right to hybrid representation either at trial or on appeal. . .  [A defendant may not] confuse and overburden the court by his own pro se filings of briefs at the same time his counsel is filing briefs on his behalf."  *Commonwealth v. Ellis*, 626 A.2d 137, 1139 (Pa. 1999); *see also Commonwealth v. Williams*, 241 A.3d 353, 355 (Pa. Super. Ct. 2020) ("[P]ro se filings submitted by counseled defendants are generally treated as legal nullities. . .  However, this Court has recognized that a counseled defendant may act on his own to protect important rights where counsel remains technically attached to the case but is no longer serving the client's interest.") (internal citations omitted).

4.      Trial Counsel was ineffective for failing to call Attorney Beroes as a defense witness.

5.      Trial Counsel was ineffective for failing to object to the judge's instruction that the jury did not have to find beyond a reasonable doubt the dates that the incidents occurred.

6.      The sentence was illegally imposed and appellate counsel provided ineffective assistance of counsel for failing to raise the issue.

Amended PCRA Petition (ECF 22-1 at pp. 502–518).

The Commonwealth filed its Answer on December 21, 2015. (*Id*. at p. 551-601).  Two months later, the trial court issued a Notice of Intent to Dismiss stating that "after a thorough review of the record which included the Amended Petition filed by appointed counsel, the Commonwealth's Response, and the Defendant's pro se Supplements," it intended to dismiss the PCRA petition without a hearing.  (*Id*. at p. 643) (emphasis added).[8]  Both Attorney Farrell and Petitioner *pro se* filed responses to the Notice of Intent to Dismiss.  (*Id*. at pp. 651-659; 672-686).  Along with responding to the Notice of Intent to Dismiss, Attorney Farrell filed a Motion for Leave to Withdraw Representation, which the record reflects was never addressed by the trial court.  (*Id*. at pp. 645-649).  By Order filed July 12, 2016, the trial court entered its Final Order dismissing the Amended PCRA Petition.  (*Id*. at p. 715).

Petitioner, through Attorney Farrell, appealed to the Superior Court of Pennsylvania raising these six claims:

1.      Trial Counsel was ineffective for failing to file a Motion to Withdraw when there was a conflict of interest.

---

[8] Petitioner in his Reply acknowledges that the trial court reviewed his *pro se* filings, but states, "[t]he trial court, to the extent it did actually rule upon any Weimer pro se claim of error, itself violated Pennsylvania jurisprudence by 'cherry picking' issues rather than to either a) allow Weimer to represent himself, b) require Farrell, as counsel of record to address the Weimer raised issues, or c) simply appoint Weimer new counsel."  Reply at p. 8 (ECF 24).

2.     Trial Counsel was ineffective for failing to suppress evidence under the Fourth Amendment and Article 1, Section 8 of the Pennsylvania Constitution.

3.     Trial Counsel was ineffective for failing to object to the trial court's instruction that the Commonwealth did not have to prove beyond a reasonable doubt the date of the crime was significant as to the age of the victim.

4.     The trial court imposed an illegal sentence of five (5) to ten (10) years of incarceration for Unlawful Contact with a Minor.

5.     The trial court imposed an illegal sentence on the Charges of Involuntary Deviate Sexual Intercourse when it imposed mandatory sentences of ten (10) to twenty (20) years pursuant to 42 Pa.C.S. § 9718, which has been held to be facially unconstitutional.

6.     The notice of intent to dismiss that was issued by the PCRA court violated Rule 907(1) of the Pennsylvania Rules of Criminal Procedure.

Petitioner's Appellant Br. (ECF 22-1 at pp. 819-820).  The Superior Court denied Claims 1, 2, 3, and 6 on their merits, and granted relief on Claims 4 and 5.  *Commonwealth v. Weimer*, No. 1042 WDA 216, slip op. (Pa. Super. Ct. July 7, 2017) (*Id*. at pp. 1004 – 1019).  As to Claim 4, the Superior Court found that "the court's 5-10 year sentence of imprisonment for Weimer's unlawful contact conviction with regard to victim J.D. is illegal where a third-degree felony under section 6318(b)(2) carries a statutory maximum sentence of seven years' imprisonment."  As a result, the sentence as it related to victim J.D. at CC 201011535 was vacated and remanded for resentencing.  (*Id.* at p. 1016).  And as to Claim 5, the Superior Court found that because Petitioner's sentence became final after the Supreme Court's decision in *Alleyne v. United States*, 570 U.S. 99 (2013), he was entitled to relief on the mandatory sentences issued on his IDSI convictions.  Thus, the judgments of sentence as to the offenses committed against R.Z. and M.G. at CC 201011522 and CC 201011523 were vacated and remanded for resentencing without application of the mandatory minimum sentence under section 9718.  (*Id*. at p. 1010).

Petitioner, through Attorney Farrell, filed a Petition of Allowance of Appeal to the Supreme

Court of Pennsylvania, raising the three ineffective assistance of counsel claims which had been denied by the Superior Court.  The Supreme Court of Pennsylvania denied the petition.  Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States.

### 4.   Resentencing Proceedings

In January 2018, upon his cases being remanded for resentencing, Petitioner filed four *pro se* motions:  a Motion for Recusal, two Motions for Arrest of Judgment / New Trial, and a Motion to Vacate his SVP Classification.  (*Id*. at pp. 1080-1207).

On February 8, 2018, Attorney Farrell filed a Motion for Leave to Withdraw Representation.  (*Id*. at pp. 1208-1214).  A few days later, Petitioner, *pro se*, filed a Motion to Remove Counsel and Proceed *pro se.* (*Id*. at pp. 1215-1226).  On February 26, 2018, Judge McDaniel issued an Order scheduling a *Grazier* hearing for March 8, 2018.[9]  (*Id*. at p. 1227).  It does not appear that a *Grazier* hearing was held.  Rather, on April 3, 2018, the trial court held a resentencing hearing.  Petitioner with Attorney Farrell appeared for the resentencing.  The trial court resentenced Petitioner to an aggregate sentence of twenty-three and a half (23 1/2) to forty-seven (47) years' incarceration:

> At CC201011535, the [Petitioner] was resentenced at the unlawful contact count to 3.5 to 7 years.  At CC 201011522, the [Petitioner] was resentenced at the involuntary deviate sexual assault count to a non-mandatory sentence of 10 to 20 years.  At CC 201011523, the [Petitioner] was resentenced at the involuntary deviate sexual assault count to a non-mandatory sentence of 10 to 20 years.  All sentences to be served consecutively.

*Commonwealth v. Weimer*, PCRA Opinion, August 23, 2019. (ECF No. 22-1 at pp. 1435-36).

---

[9] The Amended Petition states that "[o]n February 26, 2018, the PCRA Court <u>conducted a hearing</u> on counsel's request to withdraw from the case.  The Court docket does not reflect whether or not the Court entered an order."  Amended Pet., ¶ 20 (ECF 20 at p. 6) (emphasis added).  The criminal case docket <u>does not</u> reflect that a hearing was held on February 26, 2018.  The docket reflects that an Order scheduling the *Grazier* hearing was entered on February 26, 2018.  (ECF 22-1 at 19).

After the sentence was announced, the following exchange occurred between the trial court, Petitioner, and Attorney Farrell:

THE COURT:  Do you wish Mr. Farrell to continue on your case?

THE DEFENDANT:  No.

THE COURT:  What do you want to do?

THE DEFENDANT:  May I have an attorney appointed, please?

THE COURT:  I will not appoint an attorney.  Mr. Farrell has been appointed to your case.  He has represented you well.  You have the right to either represent yourself - - -

(Discussion held off the record between Counsel and Defendant.)

THE DEFENDANT:  I have no choice, my hands are, as they say, handcuffed.  So I guess I got to stay with him.

THE COURT:  Mr. Farrell, if you will talk with your client to see whether or not he wishes to appeal this decision.

MR. FARRELL:  He does, Your Honor.  There is no question about that.  I think that was not even a question.

THE COURT:  Okay.

MR. FARRELL:  And I will handle that.

THE COURT:  Thank you, Mr. Farrell.

(Resent. T. at pp. 6-7).  Attorney Farrell then filed post-sentencing motions, (*id*. at pp. 1246-74), and Petitioner, *pro se*, filed several of his own motions, including: a Supplemental Motion to Defense Counsel's Post Sentence Motions, two Amended Post Sentence Motions, and a Petition to Remove Court Appointed PCRA Counsel *(id*. at pp. 1275-1352).  On September 11, 2018, the court denied Petitioner's pro se motions, including his request to remove counsel.  (*Id*. at pp. 1353-54).  On September 27, 2018, the motions filed by Attorney Farrell on Petitioner's behalf were denied by operation of law.  (*Id*. at p. 1355).

11

On September 27, 2018, Petitioner, *pro se*, filed a Notice of Appeal from the trial court's order denying his petition to remove court appointed counsel.  On October 10, 2018, Attorney Farrell filed a Notice of Appeal raising these five (5) claims:

    1.    The sentencing court erred or abused its discretion by failing to apply or use the sentencing guidelines to resentence Petitioner.

    2.    The sentencing court abused its discretion in sentencing Petitioner by failing to give adequate reasons to go outside the aggravated range of the sentencing guidelines as to the charge of unlawful conduct with a minor.

    3.    The sentencing court abused its discretion by imposing a harsh sentence when Petitioner was sentenced to an aggregate sentence of twenty-three and one half (23-1/2) to forty-seven (47) years of incarceration.

    4.    The sentencing court abused its discretion in using improper information in the Pre-Sentence Investigation Report which had been expunged.

    5.    The sentencing court erred or abused its discretion by failing to remove Attorney Thomas N. Farrell and appoint new counsel.

(*Id.* at pp. 1404-1406). On January 18, 2018, the Superior Court issued the following Order:

    As a review of the lower court reflects that Appellant was represented by court-appointed counsel, that the lower court granted Appellant's request to schedule a ***Grazier*** hearing in February 2018, but that no hearing was held nor determination made by the lower court, the lower court will hold a ***Grazier*** hearing prior to the transmission of the certified record to this Court and no later than 30 days from the date of this Order. If appellant is not currently represented by counsel, but is entitled to the appointment of counsel, the trial court shall appoint counsel. Or, if Appellant desires to remain *pro se* the trial court shall conduct a colloquy of Appellant pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

    The lower court shall inform this court, in the form of a letter to the Prothonotary, of any action taken thereon. Jurisdiction of this Court is **RETAINED** pending compliance with this order.

*Commonwealth v. Weimer*, No. 3 WDA 2019, slip op. (Nov. 18, 2018, per curiam). (ECF 22-1 at pp. 1398-99) (emphasis in original).    Because of Judge McDaniel's retirement on January 31, 2019, the *Grazier* hearing was held before the Honorable David R. Cashman on April 8, 2019.  (*Grazier* Hrg. T.).  After hearing from counsel and from the Petitioner, Judge

Cashman granted Attorney Farrell's motion for leave to withdraw and appointed Attorney Patrick K. Nightingale to represent Petitioner in his appeal.  (ECF No. 22-1 at p. 1412).  On July 31, 2019, the Superior Court denied as moot the *pro se* appeal challenging the denial of Petitioner's request to have counsel removed.

On January 3, 2020, Petitioner, through Attorney Nightingale, filed a brief in the Superior Court raising one issue: "Did the Trial Court abuse its discretion when [] sentencing Appellant to consecutive statutory maximum sentences in excess of the Aggravated Range of the sentencing guidelines and without giving meaningful consideration to the sentencing factors set forth at 42 Pa.C.S.A. § 9721?"  (*Id*. at p. 1447).  On April 27, 2020, the Superior Court affirmed the judgments of sentence. (*Id*. at pp. 1506-1516).  Petitioner filed a petition for allowance of appeal in the Supreme Court of Pennsylvania.  Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States.

### B.      Federal Court Proceedings

On May 28, 2020, Petitioner filed in this Court, through new counsel, a habeas petition pursuant to 28 U.S.C. § 2254 ("Petition"), Statement in support of habeas corpus relief, and Memorandum of Law in support of habeas corpus relief. (ECF 1, 1-2, and 4, respectively).  In his Memorandum of Law, he asserts that he "challenges the entire criminal prosecution beginning from his preliminary hearing up to and including his post-conviction and resentencing." (ECF 4 at p. 1).  On August 5, 2020, Respondents filed a motion to stay on the grounds that Petitioner's petition for allowance of appeal was pending before the Supreme Court of Pennsylvania.  (ECF 9).  The Court granted the motion the next day and stayed and administratively closed the case during the pendency of Petitioner's state court proceeding. (ECF 10).  On December 11, 2020, Petitioner filed a copy of the Supreme Court of Pennsylvania's allocator docket sheet showing his

Petition for Allowance of Appeal had been denied on December 2, 2020.  (ECF 12).  The Court

then lifted the stay and Respondents were ordered to file an Answer.  (ECF 13).

Instead of filing an Answer, Respondents filed a motion for more definite statement.  (ECF

17).  The Court, upon review of the Petition, Statement in Support, and Memorandum of Law in

Support, granted the motion agreeing with Respondents that it was difficult to discern precisely

which claims Petitioner was raising to this Court.  (ECF 19).  On April 4, 2021, Petitioner, through

counsel, filed an Amended Petition ("Amended Petition").  (ECF 20).

Respondents filed an Answer arguing that the Amended Petition should be dismissed as

none of the claims raised are exhausted and all are procedurally defaulted and Petitioner has

established no exception to excuse the default.  In the alternative, Respondents argue that, even if

not procedurally defaulted, the claims fail on the merits.  (ECF 22).  Petitioner filed a Reply, in

which he asserts that his "exhaustion and default issues stem from his post conviction counsel's

abandonment." (ECF 24 at p. 7).  Respondents filed a Sur-Reply reasserting their position that

Petitioner has demonstrated no exception to overcome his procedural default. (ECF 26).

The Court has reviewed the filings of the parties, as well as the original state court record,

including the transcripts from Petitioner's trial, sentencing and resentencing hearings, and the

*Grazier* hearing, as well as the appellate briefs filed with the Pennsylvania Superior Court.  The

matter is fully briefed and ripe for disposition.

## III.    The Standard for Habeas Relief under 28 U.S.C. § 2254

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in

violation of the law."  *Harrington v. Richter*, 562 U.S. 86, 91 (2011).  Federal courts reviewing

habeas corpus petitions "must be vigilant and independent . . . a commitment that entails

substantial judicial resources."  *Id.*   This  case  is  governed  by  the  federal  habeas  statute

applicable to state prisoners, 28 U.S.C. § 2254, as amended by the AEDPA, "which imposes significant procedural and substantive limitations on the scope" of the Court's review. *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 227 (3d Cir. 2017).

A finding of fact made by a state court, including credibility determinations, always has been afforded considerable deference in a federal habeas proceeding. *Vickers*, 858 F.3d at 850 (even in pre-AEDPA cases, "'federal habeas courts [had] no license to redetermine credibility of witnesses who demeanor ha[d] been observed by the state trial court, but not by them'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). AEDPA continued that deference and mandates that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*.

AEDPA also put into place a new standard of review, which is codified at 28 U.S.C. § 2254(d):

> AEDPA requires federal courts to give due regard to state court rulings. Where the state court has adjudicated the merits of a petitioner's habeas claims, federal habeas relief is available only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Becker v. Sec'y Pennsylvania Dep't of Corr.*, 28 F.4th 459, 460 (3d Cir. 2022) (quoting 28 U.S.C. § 2254(d)). For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground. *See, e.g.*, *Richter*, 562 U.S. at 98-100; *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014).

Section 2254(d)(1) applies to questions of law and mixed questions of law and fact. In applying it, this Court's first task is to determine what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). "The clearly established law" is "'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'" *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 280 (2016) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (3d Cir. 2003)).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States," is identified, this Court must determine whether the state court's adjudication of the claim at issue was "contrary to" that law. *Williams,* 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning). A state-court adjudication is contrary to clearly established Federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *id.* at 405, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 406.

A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. *Id.* at 406. For that reason, the issue in most federal habeas cases is whether the adjudication by the state court survives review under the "unreasonable application" clause of § 2254(d)(1).

"A state court decision is an 'unreasonable application of federal law' if the state court 'identifies the correct governing legal principle,' but 'unreasonably applies that principle to the facts of the prisoner's case.'" *Dennis,* 834 F.3d at 281 (quoting *Williams*, 529 U.S. at 413). To

satisfy his burden under this provision of AEDPA's standard of review, Petitioner must do more than convince this Court that the state court's decision was incorrect. *Id.* He must show that it "'was <u>objectively</u> unreasonable.'" *Id.* (quoting *Williams*, 529 U.S. at 409) (emphasis added by *Dennis*). This means that Petitioner must show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. As the Supreme Court noted:

> It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See Lockyer, supra,* at 75, 123 S. Ct. 1166. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

*Id.* at 102.

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]"[10] *Burt v. Titlow*, 571 U.S. 12, 18 (2013). "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to support the state court's factual findings." *Dennis,* 834 F.3d at 281 (quoting § 2254(d)(2) and citing *Miller-*

---

[10] Sections 2254(d)(2) and (e)(1) "express the same fundamental principle of deference to state court findings[,]" and federal habeas courts "have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of state court factual determinations." *Lambert*, 387 F.3d at 235. The Court of Appeals has instructed that § 2254(d)(2), when it applies, provides the "overarching standard" that a petitioner must overcome to receive habeas relief, while 2254(e)(1) applies to "specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision." *Id.*

*El v. Cockrell*, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Titlow*, 571 U.S. at 18 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see also Becker,* 28 F.4th at 464 (stating that "close calls - decisions upon which reasonable minds might disagree – are essentially insulated from federal court reversal AEDPA, which requires federal judges to defer to the reasonable state trial court findings . . .).

## IV.   Procedural Benchmarks - Exhaustion and Procedural Default

### A.   <u>Exhaustion of State Court Remedies</u>

Among AEDPA's procedural prerequisites is a requirement that the petitioner "has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b).  The "exhaustion doctrine" requires that a state prisoner raise his federal constitutional claims in state court through the proper procedures before he litigates them in a federal habeas petition. *See, e.g.*, *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). It is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement. *Id*. In Pennsylvania, this requirement means that a petitioner in a non-capital case

must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court either on direct or PCRA appeal. *See, e.g., Lambert,* 387 F.3d at 233-34.[11]

### B.   Procedural Default

If a claim has not been fairly presented "to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play." *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (citations omitted).   The doctrine of procedural default serves as a corollary to the exhaustion requirement and provides a basis for a federal court to refuse to review a habeas claim.   Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate "cause" to excuse the default and "actual prejudice resulting from the alleged constitutional violation."   *Preston v. Superintendent Graterford SCI,* 902 F.3d 365, 375 (3d Cir. 2018) (quoting *Davila v. Davis*, -- U.S. ---, 137 S. Ct. 2058, 2065 (2017) (quoting *Wainwright v. Skyes*, 433 U.S. 72 (1977)), *cert. denied*, -- U.S. ---, 139 S. Ct. 1613 (2019)).[12]   The burden lies with a petitioner to demonstrate circumstances that would excuse a procedural default.   *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750.

---

[11] On May 9, 2000, the Supreme Court of Pennsylvania issued Order No. 218 declaring that federal habeas petitioners no longer have to appeal to the state supreme court to satisfy the exhaustion requirement. *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,* No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) (per curiam). The Court of Appeals for the Third Circuit has recognized the validity of this Order. *See Lambert v. Blackwell,* 387 F.3d 210, 233-34 (3d Cir. 2004).

[12] A petitioner, alternatively, can overcome a procedural default by demonstrating that the court's failure to review the defaulted claim will result in a "miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 748 (1991); *McCandless v. Vaughn*, 172 F.3d 225, 260 (3d Cir. 1999). "However, this exception is limited to a 'severely confined category [] [of] cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner]'." *Preston*, 902 F.3d at 375 n.11 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (internal alteration in original) (quoting *Schlup v. Delo*, 514 U.S. 298, 329 (1995)).

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted). To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). If the petitioner has established grounds to excuse the default, the standard of review of § 2254(d) does not apply and the federal court reviews the claim "de novo because the state court did not consider the claim on the merits." *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017) (citation omitted). In any event, in all cases and whether or not the § 2254(d) standard of review applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless the petitioner rebuts that presumption by clear and convincing evidence. *Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010); *Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir. 2001)).

**V.   Discussion**

At the outset, the Court notes that although counsel was ordered to number separately each claim for relief in the Amended Petition, counsel failed to do so.  Rather, the Amended Petition consists of ninety-nine numbered paragraphs, with some headings in bold, other headings in italics, seemingly identifying a claim for relief and related sub-claims.  As a result, like the claims in the original Petition, the claims in the Amended Complaint continue to be presented in a

complicated fashion making it difficult for the Court to ensure that it has a complete picture of each claim.

With that said, it appears Petitioner has raised many claims for habeas relief based on trial court error, collateral appeal court error, and ineffective assistance of trial, sentencing, direct appeal, and PCRA counsel.  Quoting from Petitioner's headings, these are his four main claims:

> 1.  **"Weimer's Sixth and 14th Amendment Rights Were Violated - Denial of A Fair Trial – Due Process,"** Amended Pet. at ¶¶ 27-53;
>
> 2.  **"Weimer's Sixth and 14th Amendment Rights were violated – Denial of Fair Trial and Post-Conviction Relief – Ineffective Assistance of Counsel."** *Id*. at ¶¶ 54-74, 88;[13]
>
> 3.  **"Judicial Bias-Prejudice."** *Id*. at ¶¶ 75-87; and
>
> 4.  **"Cumulative Error."** *Id*. at ¶¶ 89-90(a) – (j).

Petitioner's claims will be addressed in turn.[14]

**A**.      <u>**Ground One – Denial of Fair Trial /Due Process**</u>

In Ground One and its sub-claims, Petitioner argues he was denied a fair trial because of prosecutorial misconduct,[15] as well as the denial of his motion to sever and other evidentiary rulings made by the trial court.  Turning now to each of the sub-claims of Ground One:

1.      Petitioner claims that he was denied due process of law under the Fourteenth Amendment to the United States Constitution because his conviction was obtained through false testimony, specifically, the testimony of Trooper Patrick Nied, J.C., M.G., J.D., and R.Z.  Relying

---

[13] Paragraph 88 of the Amended Petition appears to be an ineffective assistance claim relating to Attorney Nightingale's representation.

[14] For organization purposes, the Court will first address Petitioner's claims of due process/ denial of fair trial, then will address his claims of judicial bias, ineffective assistance of counsel, and cumulative error.

[15] Petitioner, quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959), argues that his conviction was obtained through false evidence: the untrue factual statements of various witnesses.

on *Napue v. Illinois*, 360 U.S. 264, 269 (1959), it appears Petitioner is trying to develop an argument that his right to due process was violated because the prosecutor at trial knowingly elicited perjury from these five witnesses. *See* Memo. at p. 4 (ECF 4 at p. 4). Petitioner has never presented a *Napue* claim to the state courts. Because Petitioner's claim can more efficiently be disposed of on a de novo review of the merits, the Court will not address the more complex issue of whether the claim is procedurally defaulted and whether such procedural default should be excused.

The central holding of *Napue* is that a defendant's right to due process of law is violated "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." 360 U.S. at 269. The rule in *Napue* "has sometimes been treated as a rule pertaining to the introduction of perjured testimony." *Prosdocimo v. Secretary, Pa. Dep't of Corr.*, 458 F. App'x 141, 146 (3d Cir. 2012). *See, e.g.*, *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) ("The Supreme Court has long held that the state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment."). Following *Napue*, the Supreme Court explained that a due process claim in this context depends on a showing that "the prosecution's case includes perjured testimony and [ ] the prosecution knew, or should have known, of the perjury." *United States v. Agurs*, 427 U.S. 97, 103 (1976). When such a showing has been made, a conviction "must be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Lambert,* 387 F.3d at 242 (quoting *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992)).

To make out a constitutional violation on such a claim, Petitioner must establish: (1) the [Commonwealth's witnesses] committed perjury; (2) the [Commonwealth] knew or should have known of the perjury; (3) the testimony went uncorrected; and (4) there is any reasonable

likelihood that the false testimony could have affected the verdict.  *United States v. John-Baptiste*, 747 F.3d 186, 210 (3d Cir. 2014) (citing *Lambert*, 387 F.3d at 242).  It is well established that "[d]iscrepancy is not enough to prove perjury."  *Lambert*, 387 F.3d at 249.  "There are many reasons testimony may be inconsistent; perjury is only one possible reason. . . [I]n order to sustain a claim of constitutional error [the petitioner] must show that [the witness] actually perjured himself and the government knew or should have known of his perjury."  *Id*.

Following a de novo review of the entire trial record, the Court finds this claim lacks merit. Petitioner has not persuasively shown that any witness testified untruthfully at trial and has made nothing more than an unsupported assertion that the trial testimony was perjured.  Nor does the Court find even a colorable claim that the prosecution knowingly suborned untruthful testimony.[16]

2.      Petitioner next claims that he was denied due process of law under the Fourteenth Amendment to the United States Constitution when the trial court improperly joined for trial the charges involving J.C., with the charges involving R.Z., M.G., and J.D.[17]  Prior to trial, defense

---

[16] The Court notes that this is not the first time Petitioner has challenged the testimony of the officer or J.C., M.G., J.D., and R.Z.  On direct review, he challenged this testimony through a weight of the evidence claim. The Superior Court denied the claim noting,

> Essentially, [Petitioner's] position is that the jury should not have found the testimony of the victims or of the officer credible; rather, the jury should have believed [Petitioner's] own testimony and that of his witnesses. . .

> Although [Petitioner] here is attacking the trial court's determination that the jury's verdict did not shock its conscience, he actually appears to request that we overturn the jury's credibility determinations.  This of course is something we cannot do.

*Commonwealth v. Weimer*, No. 1331 WDA 2012 at p.8 (Pa. Super. Ct. 2012) (ECF 22-1 at p. 390).

[17] Petitioner also argues that he was prejudiced by "prosecutorial 'forum shopping'" with respect to venue as the charges relating to J.C. should have been brought in Washington County, not Allegheny County.  This argument can be denied summarily.  Petitioner has provided no colorable argument that he was unduly prejudiced by these charges being brought in Allegheny County.

counsel's request to sever the cases was denied by the trial court.

Petitioner alleges that the consolidation of the charges was unfair and prejudicial to his trial, which tenuously implicates the Due Process Clause.  Despite this tenuous implication, however, decisions on consolidation of offenses and decisions on motions to sever charges are state law questions.  *See Williams v. Marsh*, No. 3:15-cv-1090, 2021 WL 7909282 (M.D. Pa. Aug. 17, 2021) (stating that "as a general rule: federal courts have held that '[c]onsolidation and severance of cases is a matter of Pennsylvania state law'.") (citations omitted).  "Errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  *Johnson v. Rosemyer,* 117 F.3d 104, 110 (3d Cir. 1997).  Thus, because Petitioner's claim of trial court error is governed exclusively by state law, this claim simply does not implicate any federal constitutional or statutory rights.  As a result, it does not provide grounds for federal habeas corpus relief.

3.      Third, Petitioner claims that he was denied a fair trial by the admission of evidence, including an unauthenticated voice recording, the contents of an email between Petitioner and J.C., which included a photograph of a man later identified as J.C.'s friend, and other crimes in violation of Pennsylvania Rule of Evidence 404(b)(1).  The state court's decision on the admissibility of evidence under the Pennsylvania Rules of Evidence is governed exclusively by state law.  As stated above, "[e]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson,* 117 F.3d at 110. As a result, Petitioner's due process claims based on evidentiary rulings do not provide grounds for federal habeas corpus relief.

4.      In Paragraph 52 of the Amended Petition, it appears Petitioner is bringing his fourth denial of due process claim - a freestanding actual innocence claim related to the claims made by

M.G.[18]  Specifically, Petitioner asserts:

> Multiple witnesses were available for trial . . . These witnesses would have testified or corroborated that alleged alleged (sic) victim MG was not known by Weimer during the times alleged and testified at trial.  Additional witnesses . . . would have testified that MG related to them [in terms of credibility] that "Weimer never touched him" [MG].  Weimer urges that he was innocence (sic) of the various multiple charges. . . In addition, Weimer points to both documentary and witness evidence to corroborate his innocence.

Amended Pet., at ¶ 52 (ECF 20 at p. 18).

While a credible claim of actual innocence can act as a "gateway" through which a habeas petitioner may pass to have an otherwise procedurally barred constitutional claim considered on the merits, *see Schlup v. Delo*, 513 U.S. 298 (1995), a freestanding or stand-alone claim of actual innocence is not cognizable in federal proceedings in a non-capital case. *Albrecht v. Horn*, 485 F.3d 103, 121-22 (3d Cir. 2007) (citing *Herrera v. Collins*, 506 U.S. 390, 400 (1993)).[19]  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera*, 506 U.S. at 400; *Albrecht,* 485 F.3d at 121-11; *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004).[20]  Further, our appellate court has explained that to the extent freestanding actual innocence claims are cognizable, they must be "assessed under a more demanding standard [that a gateway actual innocence claim], since the petitioner's [freestanding] claim is that his conviction is constitutionally impermissible 'even if his conviction was the

---

[18] It is unclear if this claim is directed only to the offenses involving M.G.  However, if the claim was meant to also encompass the offenses involving R.Z. and J.D, the analysis is the same.

[19] In *Herrera*, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim."  *Herrera*, 506 U.S. at 417.

[20] The Court of Appeals for the Third Circuit has acknowledged that the Supreme Court has yet to definitively resolve the issue.  *Reeves v. Fayette SCI*, 897 F.3d 154, 160 n.4 (3d Cir. 2018).

product of a fair trial[.]"  *Reeves v. Fayette SCI*, 897 F.3d 1554, 160 n.4 (3d Cir. 2018) (quoting *Schlup*, 513 U.S. at 316 and citing *House v. Bell*, 547 U.S. 518, 555 (2006)).

In the alternative, even if a freestanding claim were cognizable, Petitioner's "new evidence" falls woefully short of meeting the extraordinarily high standards required for establishing actual innocence under *Herrera*.  Petitioner, along with ten additional witnesses, testified in his behalf during his trial.  He argues that at least thirteen other witnesses were available to testify as to his innocence.  Petitioner also relies on two pieces of correspondence written by J.D. as "new evidence," which allegedly corroborates his innocence. (ECF 1-12 at pp. 29, 32).

The first correspondence is addressed to "Bryan Gilbert," who appears to be a prisoner at SCI Fayette. That correspondence is undated, but the envelope is post-marked December 28, 2014, more than three years after Petitioner's trial.  J.D. writes, "And tell Paul I want to help him but I would have a lot of people hating me IDK what do to bro I really don't my head has been in a million places. You have no idea." (ECF 1-12 at p. 29 (quoted verbatim)).  The second correspondence is addressed to Petitioner, undated but the envelope is post-marked January 9, 2015.  In that correspondence, J.D. writes:

> Hey man it me [J.D.] I just got to tell you I'm so sorry I never ment for none of that to happen.  . . . .
>
> I should of never testified against you you was like family Paul. . .
>
> But you got to understand they mad me talk they mad me go to Court and they mad me testifie against you  I never wanted to see you in prison like this not in a million years.  Every makes mistakes Paul and I mean everyone and I [blacked out in original] give you.  (GOD IS WITH US) . . .
>
> And I don't know if im even aloud [sic] to write this to you or if where you even aloud to talk but I finally Got your mailing address and I had to write to you I needed you to understand that I never ment to do that to you  When I seen your face exspression when I walked in the Court it hurt me.
>
> IM SO SORRY PAUL

Miss you man
[J.D.]

(ECF 1-12 at pp. 31-35) (quoted verbatim).

The Court finds that even if the evidence could be considered "new," it simply is not of the quality and charactered required under *Herrera*. Accordingly, Petitioner has fallen short of offering the type of new evidence of innocence that would entitle him to relief.

For all these reasons, Ground One, and all its sub-claims, will be denied.

## B.  Ground Two - Judicial Bias-Prejudice

In this claim, Petitioner argues that he suffered prejudicial bias when the trial judge failed to recuse herself from his cases.[21] Accordingly to Petitioner, "[t]he judge's procedural actions represented a 'breakdown' in the Court's process." Reply at p. 9 (ECF 24). This claim is unexhausted because it has never been presented to the Superior Court for consideration on the merits and, now due to the passage of time, it is also procedurally defaulted. This claim, like Petitioner's other procedurally defaulted claims, can be more efficiently disposed of on the merits.

Due process requires a "fair trial in a fair tribunal," *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997) (citing, *inter alia*, *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)), before a judge with no actual bias against the defendant, or interest in the outcome of the particular case. To succeed on

---

[21] In Paragraph 85 of the Amended Petition, Petitioner, citing *Commonwealth v. McCauley*, 199 A.3d 947 (Pa. Super. Ct. 2018), states that "on November 28, 2018, the Superior Court in an unrelated case and decision determined that Donna Jo McDaniels (sic), Judge, was thereafter barred from consideration of any cases involving sexual abuse . . ." (ECF 20 at p. 39) (emphasis added). Contrary to Petitioner's statement, the Superior Court in *McCauley* did not bar Judge McDaniel from cases involving sexual abuse. Rather, the Superior Court found that Judge McDaniel had abused her discretion in denying defendant's motion for recusal and remanded the case with instructions to the President Judge of the Allegheny County Court of Common Pleas for the purpose of reassigning defendant's resentencing to a new judge of the Court of Common Pleas of Allegheny County. *McCauley*, 199 A.3d at 954.

a judicial bias or misconduct claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Winthrow*, 421 U.S. at 47.

After an independent review of the record, the Court finds that none of the trial judge's actions or statements made either before the start of the trial or during the trial, or at either sentencing hearing, individually or combined, reveal any improper bias. Because nothing in the record supports Petitioner's allegations of judicial bias by the trial judge, this claim will be denied.

Petitioner also argues that the trial court "abused her judicial authority by altering and changing the official records of his criminal charges related to the criminal information at cases (sic) numbers CP-02-CR-0011535-2010," which led to the necessity for a resentencing. Amended Pet. at ¶ 82 (ECF 20 at p. 37). Petitioner offers no support for this bald assertion. The state court record reflects that the Superior Court on collateral review found a grading error had been made on Petitioner's conviction at CP-02-CR-0011535-2010 and remanded for resentencing. *Commonwealth v. Weimer*, No. 1042 WDA 2016, (Pa. Super. Ct. July 7, 2017). The record is void of any evidence suggesting that the trial court changed the official records of Petitioner's criminal charges.

Further, to the extent that Petitioner is alleging judicial bias during his PCRA proceedings, such a claim is not grounds for federal habeas relief. *See Abu-Jamal v. Horn*, 520 F.3d 272, 297 (3d Cir. 2008), *rev'd on other grounds*, *Beard v. Abu-Jamal*, 558 U.S. 1143 (2010) (holding that a claim that petitioner was denied due process during post-conviction proceedings is not a cognizable claim under federal habeas review). As the Court of Appeals for the Third Circuit has explained:

> The federal courts are authorized to provide collateral relief where a petitioner is in state custody or under a federal sentence imposed in violation of the Constitution or the laws or treaties of the United States. 28 U.S.C. §§ 2254, 2255. <u>Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating</u>

> what occurred in the state or federal proceedings that actually led to the petitioner's
> conviction; what occurred in the petitioner's collateral proceeding does not enter
> into the habeas calculation.

*Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998) (internal citations omitted) (emphasis

added); *see also Lambert,* 387 F.3d at 247 (holding that "alleged errors in collateral proceedings.

. . are not a proper basis for habeas relief from the original conviction.").

For all these reasons, Ground Two, and its sub-claims, will be denied as the Court finds

that it does not afford a basis for granting of a writ of habeas corpus.

### C.    Ground Three - Ineffective Assistance of Counsel

In Ground Three, Petitioner raises ineffective assistance of counsel claims against every

attorney who represented him at every stage of his state court proceedings.  Claims alleging the

ineffectiveness of counsel are grounded in rights guaranteed under the Sixth Amendment to the

United States Constitution.  The Supreme Court of the United States in *Strickland v. Washington*,

466 U.S. 668 (1984), announced a two-prong test that a habeas petitioner must meet before a

federal court can find counsel failed to provide effective assistance under the Sixth Amendment.

This same standard has been incorporated by Pennsylvania courts as the proper basis to consider

challenges for ineffective assistance of counsel under the Pennsylvania constitution. *See*

*Commonwealth v. Pierce*, 527 A.2d 973, 976 (Pa. 1987) (stating that Pennsylvania courts apply

elements of the *Strickland* test to ineffective assistance of counsel claims).  A Pennsylvania court's

resolution of an ineffective assistance claim, therefore, is presumed to apply clearly established

federal law and is due the substantial deference required by 28 U.S.C. § 2254(d).

Under the first prong of *Strickland*, often called the "performance" prong, a petitioner must

show that counsel's performance fell below an objective standard of reasonableness. *Strickland,*

466 U.S. at 688.  Under the second prong, often called the "prejudice" prong, a petitioner must

demonstrate that the deficient performance prejudiced him, meaning that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 692. Although a petitioner must satisfy both prongs to succeed on an ineffectiveness claim, the Supreme Court noted that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*. at 697. *See also Mathias v. Superintendent Frackville SCI*, 876 F.2d 462, 477 (3d Cir. 2017). It is self-evident that counsel cannot be ineffective for failing to pursue meritless claims or objections. *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Claims of ineffective assistance of appellate counsel must be examined under the same *Strickland* standards cited above: (1) whether counsel's performance was unreasonable; and (2) whether counsel's unreasonable performance actually prejudiced the defense. *Strickland*, 466 U.S. at 687. If the court finds no merit in a claim of ineffective assistance of trial counsel, appellate counsel cannot be found ineffective for failing to raise those same meritless issues on appeal. Stated otherwise, if there is no ineffective assistance of counsel at the trial level, there can be no ineffective assistance of counsel on appeal for failure to raise the same issue. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (finding that a criminal defendant has no constitutional right to insist that appellate counsel advance every non-frivolous argument that defendant wants raised); *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (holding that appellate counsel does not have a duty to raise every possible claim). As the Supreme Court has stated:

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key facts . . . A brief that raises every colorable issue runs the risk of burying good arguments – those that . . . "go for the jugular". . . – in a verbal mound made up of strong and weak contentions.

*Jones*, 463 U.S. at 751-53 (citations omitted). "Indeed, an appellate lawyer's exercise of professional judgment in omitting weaker claims is obviously of benefit to the client:  the more claims an appellate brief contains, the more difficult for an appellate judge to avoid suspecting that there is no merit to any of them." *Johnson v. Tennis,* 549 F.3d 296, 302 (3d Cir. 2008) (citation and internal quotation marks omitted).

A constant theme in each of Petitioner's claims is that his counsel failed to raise issues, claims, and evidence which he brought to their attention.  It is well established that counsel's performance is presumed to be effective, *Strickland,* 466 U.S. at 690, and "counsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue is ordinarily entrusted to counsel's professional judgment." *McFarland v. Yukins*, 356 F.3d 688, 719 (6th Cir. 2004) (citing *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) and *Smith v. Murray*, 477 U.S. 527, 536 (1986)) (internal quotations omitted).  Moreover, appeal counsel is charged with exercising professional judgment in deciding whether there are any colorable claims for relief on appeal.  Counsel also has an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims.  *See, e.g.*, *Commonwealth v. Chmiel*, 30 A.3d 111, 1190-91 (Pa. 2011).

With this framework in mind, the Court will now turn to an analysis of each Petitioner's ineffective assistance of counsel claims.

### 1.     Trial Counsel

Petitioner raises multiple arguments of ineffective assistance of trial counsel in his Amended Petition.  Before turning to the individual claims, though, the Court notes that Petitioner's argument that he was "constructively abandoned" by his trial counsel is without merit and his reliance on the Supreme Court's decision in *United States v. Cronic*, 466 U.S. 649 (1984),

is misplaced.  In *Cronic*, the Supreme Court identified a narrow exception to the application of *Strickland*'s prejudice requirement.  Noting that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified," the Court concluded that when such circumstances are present, "a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  466 U.S. at 658, 659.  The Court of Appeals for the Third Circuit has identified three situations in which a court should apply the *Cronic* presumed prejudice standard:

> The first is when there is a "'complete denial of counsel'" at a critical stage in the trial proceedings. *Bell* [*v. Cone*, 535 U.S. 685, 695-96 (2002)] (quoting *Cronic*, 466 U.S. at 659).  Second are situations in which a petitioner is represented by counsel at trial, but counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing."  *Id.*  And third, situations at trial where counsel could not render competent assistance.  *Id.*

*Davenport v. Diguglielmo*, 215 F. App'x 175, 182 (3d Cir. 2007) (not precedential).  In the second situation, "*Bell* held if counsel only fails to challenge the prosecution's case at specific points, to further a reasonable trial strategy, and not in its entirety, then *Cronic* does not apply." *Id*. (citing *Bell*, 535 U.S. at 697).

In reviewing each of Petitioner's claims against his trial counsel, and after an independent review of the state court record, it is clear that the *Cronic* presumption of prejudice rule does not apply to any of the issues Petitioner has raised.  Thus, the Court will apply the standard established in *Strickland* to Petitioner's ineffective of assistance of trial counsel claims.

Next, Respondents correctly note that the vast majority of Petitioner's claims has not been properly exhausted in state court and are procedurally defaulted for purposes of federal habeas review.  Petitioner concedes that the claims are procedurally defaulted.  He responds that he asked both appellate counsel and post-conviction counsel to raise the claims but counsel did not do so

for various reasons, including a breakdown in the attorney-client relationship with his PCRA counsel.[22]  Petitioner cites *Martinez v. Ryan*, in an attempt to excuse the procedural default.

For claims of ineffective assistance of trial counsel not preserved and thus defaulted on collateral review, *Martinez* provides a possible means for establishing cause to excuse the default. *Martinez*, however, does not apply to claims of ineffective assistance of PCRA counsel acting in an appellate capacity.  It "applies only to attorney error causing procedural default during initial-review collateral proceedings,[23] not collateral appeals." *Norris v. Brooks*, 794 F.3d 401, 405 (3d Cir. 2015).  *See also Proper v. Clark*, No. 1:17-cv-208, 2020 WL 1814390, at *9 (W.D. Pa. Apr. 9, 2020) ("the exception created in *Martinez* . . . does not apply to claims that <u>appellate</u> PCRA counsel rendered ineffective assistance.") (emphasis in original); *Pritchett v. Superintendent, SCI Laurel Highlands*, No. 2:16-cv-1751, 2020 WL 1643385 (W.D. Pa. Apr. 2, 2020) (same); *McKenzie v. Tice*, No. 1:18-cv-2210, 2020 WL 1330668, *8 (M.D. Pa. Mar. 23, 2020) (same); *Deep*, No. 14-cv-831, 2020 WL 908259, at *12 (same).

The Court will now turn to each of the sub-claims raised in Ground Three.  Except for sub-claims 8 and 9, these sub-claims were never presented to the state courts and as such is now procedurally defaulted.  As with Petitioner's other procedurally defaulted claims, in the interest of judicial economy the Court will undertake a de novo review of these claims.  "Even under de novo

---

[22] According to Petitioner, "[a]n immediate 'disconnect' occurred between [Petitioner] and Farrell. Even though [Petitioner] wrote innumerable letters to Farrell, Farrell did not immediately respond to any of [Petitioner's] correspondence.  Thereafter, [Petitioner] viewing his situation as dire, began filing a series of "Supplemental PCRA Petitions" to address what he felt were needed pleadings."  Reply at p. 9. (ECF 24).

[23] "Initial collateral proceedings cease at the moment that the PCRA court dismisses the PCRA petition and actions taken thereafter, such as the filing or failing to file a notice of appeal or actions in connection with the filing of a statement of matters complained of on appeal all constitute actions of PCRA counsel acting in an appellate capacity and, therefore, fall outside the *Martinez* exception." *Deep v. Wingard*, No. 14-cv-831, 2020 WL 908259, at *13 (W.D. Pa. Feb. 25, 2020).

review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knows of material outside the record, and interacted with the client, with opposing counsel, and with the judge." *Richter*, 526 U.S. at 105. For sub-claims 8 and 9, those claims will be reviewed by the Court under the deferential standard of review under AEDPA. *See* 28 U.S.C. § 2254(d).

a.     In his first sub-claim, Petitioner asserts that trial counsel ignored his demands to challenge the timeline of events. Petitioner's argument is belied by the trial record. The trial transcript reflects that counsel questioned the timeline of events with every witness. Counsel questioned how old each victim was a the time the incidents they described occurred and vigorously attacked the credibility the witnesses during cross-examination. In evaluating counsel's performance in accordance with *Strickland*, Petitioner has failed to show that counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. As a result, Petitioner's first sub-claim of ineffective assistance of trial counsel will be denied.

To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails. Counsel cannot be ineffective for failing to pursue a meritless claim. *Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

b.     In his second sub-claim, Petitioner asserts that trial counsel refused to present evidence to the jury on the credibility of his accusers. In particular, Petitioner asserts counsel failed to present evidence that he bought a vehicle in June 2006, not May 2006, as two of his accusers testified. Petitioner has failed to establish that he was prejudiced by counsel's failure to present this evidence. Petitioner has thus failed to meet the second prong of *Strickland* and Petitioner's second sub-claim of ineffective assistance of trial counsel fails.

To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim. *Sanders*, 165 F.3d at 253.

c.     In his third sub-claim, Petitioner asserts that trial counsel failed to impeach John Waterman.  According to Petitioner, after his arrest, John Waterman "looted" Petitioner's home. Amended Pet. at ¶ 56 (ECF 20- at p. 22).  Petitioner has offered no support for either the assertion that his home was "looted" or that John Waterman "looted" his home.  As a result, the claim fails to present a cognizable habeas claim.

The Court notes though that Mr. Waterman was cross-examined by Petitioner's counsel and asked questions designed to put his credibility before the jury.  On direct examination, Mr. Waterman testified that he had lived with Petitioner for about seven or eight years and that Petitioner became his legal guardian around the time Mr. Waterman moved into Petitioner's house. N.T. at pp. 259, 260-61.[24]  He also testified that he encountered financial difficulties as a result of moving out of Petitioner's home, due to increase rent payments and extra bills. *Id.* at p. 274.  On cross-examination, he testified that he remained in Petitioner's home for about a month after Petitioner had been arrested.  He was asked if he took anything out of the house when he left, and he replied, "my belongings."  N.T. at p. 292:21.

Petitioner has failed to allege, let alone, prove either prong of *Strickland.*  He has offered nothing to show that his counsel's performance was deficient or that he was prejudiced by counsel's failure to question Mr. Waterman about any alleged "looting."  As a result, the Court

---

[24] Mr. Waterman was twenty-three years old at the time of Petitioner's trial.  He testified he was 15 years old when he moved into Petitioner's home.

finds Petitioner's third sub-claim of ineffective assistance of trial counsel lacks merit and will be denied summarily.

To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim. *Sanders*, 165 F.3d at 253.

d.      In his fourth sub-claim, Petitioner asserts that trial counsel failed to challenge the credibility of M.G. based on M.G.'s forging Petitioner's name on a check and receiving the funds. The trial transcript reveals that Petitioner's counsel did question M.G. about the alleged forged check:

Q: [M.G.], did you cash a check of Paul's after his arrest in August of 2010?

A:  No, ma'am, not that I can recall.

Q:  But you might have?

A:  No.

Q:   You didn't sign your name to the back of his check and put it in your bank account?

A:  No.

N.T. at pp. 203-04.

Again, Petitioner has failed to allege, let alone, prove either prong of *Strickland.*  He has offered nothing to show that his counsel's performance was deficient or that he was prejudiced by counsel's failure to continue questioning M.G. about this alleged forged check.  For these reasons, the Court finds that Petitioner's fourth sub-claim of ineffective assistance of trial counsel lacks merits and will be denied.

To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim. *Sanders*, 165 F.3d at 253.

e.      In his fifth sub-claim, Petitioner asserts that trial counsel failed to fully present to the jury the custody situation of M.G. and R.Z.  This claim is unsupported by the record and, as such, lacks arguable merit.  During opening arguments, the jury was made aware that Petitioner had been given guardianship over M.G. and R.Z.  Both M.G. and R.Z. testified about Petitioner's guardianship and R.Z.'s father testified that he had signed over guardianship.  N.T. at p. 331. Petitioner offers no argument as to how any additional testimony about his guardianship would have changed the outcome of his case or offered any argument as to how he was prejudiced by this alleged lack of further presentation.  The Court finds that Petitioner's fifth sub-claim of ineffective assistance of trial counsel lacks merits and will be denied.

To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim. *Sanders*, 165 F.3d at 253.

f.      In his sixth sub-claim, Petitioner asserts that trial counsel failed to call at trial witnesses who would have provided alibi testimony or testified as to Petitioner's actual innocence. Amended Pet. at ¶ 52 (ECF 20 at p. 18).  Petitioner in essence is challenging counsel's decision about which witnesses to call at trial.  When a petitioner challenges his or her counsel's decision about which witnesses to call, courts "are 'required not simply to give [the] attorney[] the benefit of the doubt, but to affirmatively entertain the possible reasons [petitioner's] counsel may have had for proceeding as he did." *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014).  "*Strickland* requires that a defendant 'overcome the presumption that, under the circumstances, the challenged

action might be considered sound trial strategy'." 466 U.S. at 689 (internal quotation marks omitted).

Petitioner lists thirteen additional witnesses he believes should have been called to testify on his behalf.  He names ten witnesses that he believes would have corroborated his testimony that he did not know M.G. during the times alleged; he lists two other witnesses that he believes would have testified that M.G. related to them that Petitioner had never touched him; and one witness who would have testified that Petitioner did not know R.Z. during the times alleged.  Amended Pet. at ¶¶ 59-62 (ECF 20 at p. 26).

The Court finds Petitioner has not met his burden to demonstrate to this Court that counsel was ineffective in failing to call these other witnesses.  He overlooks that, along with his own testimony, his counsel called ten witnesses who either offered an alibi or who testified on his innocence and the victims' demeanors.  He offers no argument that it was not sound trial strategy for counsel not to call these witnesses.  And he offers no argument why these witnesses' testimony would not have been cumulative of the other defense witnesses' testimony.  Petitioner has also failed to demonstrate that he was prejudiced by counsel's decision not to call these witnesses.  The jury heard testimony along these same lines from Petitioner and the other defense witnesses who testified at trial.

For these reasons, the Court finds that Petitioner has failed to allege, let alone, prove either prong of *Strickland*.  He has offered nothing to show that his counsel's performance was deficient or how he was prejudiced by counsel's failure to call these other witnesses.  As a result, the Court finds that Petitioner's sixth sub-claim of ineffective assistance of trial counsel lacks merit and will be denied.

If Petitioner is claiming that his PCRA counsel was ineffective for failing to raise an ineffective claim because counsel failed to call these additional witnesses to testify, this claim also fails.  Counsel cannot be ineffective for failing to pursue a meritless claim.  *Sanders*, 165 F.3d at 253.

        g.      In his seventh sub-claim, Petitioner asserts that counsel failed to present a zealous defense.  The trial transcript reflects that defense counsel conducted significant cross-examination of the Commonwealth's witnesses and meaningfully tested the Commonwealth's case.  And while the Court recognizes that the PCRA court's 1925(a) opinion is not binding on this Court, the analysis is persuasive.  After a de novo review, this Court adopts the analysis of the issue made by the PCRA court as its own and will deny the claim on its merits:[25]

> The Defendant now avers that Attorney Allman failed to zealously advocate for him at trial both as a general proposition and for a laundry list of perceived examples of ineffectiveness which were not explained, discussed or analyzed. . . . Given the lack of explanation or review, this Court is unable to provide any meaningful analysis of the Defendant's laundry list of perceived wrongs. . . .

> To the extent that the Defendant seeks to raise a claim regarding Ms. Allman's conduct in general, that claim is also meritless.  After presiding at trial and having the opportunity to observe Ms. Allman's conduct both before and during trial, the Court feels that Ms. Allman was obviously well-prepared for trial, that she engaged in effective witness examinations, both on direct and cross-examination, that she made appropriate and effective arguments and, ultimately, that she presented the best defense she could with the facts she was given.  <u>It is also important to note that she did secure acquittals on the most serious charges.</u>  It is understandable that the Defendant is upset by the guilty verdicts, however, the mere fact that some of the verdicts were guilty does not mean that counsel was ineffective. . . [T]here was no basis for a finding of ineffectiveness on any of the

---

[25] In doing so, the Court is not applying the deferential standards of AEDPA to the PCRA trial court's analysis and determining that the PCRA trial court's analysis was not contrary to or an unreasonable application of federal Supreme Court precedent.  *See e.g., Thomas v. Horn,* 570 F.3d 105 (3d Cir. 2009) (holding that if a state trial court addresses an issue on the merits but the state appellate court finds the issue to be waived under state law, the federal habeas courts may not look through the state appellate court's finding of waiver and conduct a contrary to or unreasonable analysis of the state trial court's disposition on the merits). Rather in reviewing de novo this claim, the Court is merely adopting as its own the PCRA trial court's analysis of this issue.

specific allegations, nor is there a basis for a finding of cumulative ineffective assistance.

PCRA Trial Court, 1925(a) Opinion, 10/13/2016 at p. 10 (ECF 22-1 at p. 789) (emphasis added).

Additionally, the Court must address Petitioner's argument that "potentially the most glaring example of all, the utter failure to take any action following the Commonwealth's unquestionably improper reference that Petitioner was incarcerated. TT 429." Reply at p. 16 (ECF 24 at p. 16). This argument requires little discussion as it is evident from the trial transcript that contrary to Petitioner's assertion, his counsel immediately requested a sidebar upon the prosecutor mentioning that Petitioner was incarcerated:

> MR. SCHULTE (on cross examination of defense witness Mary Lynn Dininno): How many times have you visited him since - - - in jail since he's been arrested on this case?
>
> MS. ALLMAN:  Your Honor, may we approach, please?
>
> (Thereupon, the following discussion was held at sidebar.)
>
> MS. ALLMAN:  We have gone through the Commonwealth's entire case with no reference to him being incarcerated.
>
> MR. SCHULTE:  That's not true.
>
> THE COURT:  That's not true.  On cross-examination you asked someone and their response was he was in jail.
>
> MS. ALLMAN:  Yes.
>
> MR. SCHULTE:  Yes.
>
> MS. ALLMAN:  If they had attempted to visit him didn't indicate they were in jail the whole time. (sic)
>
> MR. SCHULTE:  I'll steer clear of it, but she opened the door.
>
> THE COURT:  Yeah, you asked somebody a question, I don't remember who, and their response was he was in jail.  The jury here's not complete idiots.  There's a sheriff breathing down his neck every minute of this trial. I'll give a cautionary instruction.

40

MR. SCHULTE:  Thank you, Your Honor.

MS. ALLMAN:  Thank you, Your Honor.

(Thereupon, the sidebar discussion was concluded)

THE COURT:  Ladies and gentlemen of the jury, the fact that the defendant in this case is incarcerated is no inference against him, and you should not draw any inference from that fact.  You must decide the charges on the facts that are now being presented.  Thank you.

MR. SCHULTE:  Thank you, Your Honor.

MR. SCHULTE:  Now, how it is that – so just to get back to my last question, how many times have you visited Mr. Weimer.

TT at pp. 429:17-25; 430:1-25; 431:1-10.

Based on this exchange, the Court finds that the claim has no merit.  For all these reasons, Petitioner's seventh sub-claim of ineffective assistance of trial counsel will be denied.  And to the extent Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim.  *Sanders*, 165 F.3d at 253.

h.      In his eighth sub-claim, Petitioner asserts that trial counsel was ineffective for failing to object to the judge's instruction that the jury did not have to find beyond a reasonable doubt the date the incidents occurred. This claim was raised on collateral review appeal and adjudicated on its merits by the Superior Court.  Thus, the claim will be reviewed under the deferential standard of review under AEDPA.  *See* 28 U.S.C. § 2254(d).

At the end of the trial, the jury was instructed, in part, as follows:

THE COURT:   The indictments allege that the crimes were committed between March of 2006 and August of 2010.  You are not bound by any of these dates that are alleged in the information.  It is not an essential element of any of the crimes charged. You may find the defendant guilty if you are satisfied beyond a reasonable doubt that he committed the crime charged in the indictment, even though you are

41

not satisfied that he committed it on a particular date that is alleged in the indictment
. . .

The defendant is charged with three counts of involuntary deviate sexual intercourse. There are three alleged victims. One victim would apply to each count. The alleged victims are [M.G., J.D., and R.Z.].

In order to find the defendant guilty of involuntary deviate sexual intercourse, you must find that the following elements have been met beyond a reasonable doubt. First, that the defendant had deviate sexual intercourse with the children. Second, that the children were under the age of 16. Third, that the defendant was four or more years older than the children. And, fourth, that the defendant and child were not married to one another . . .

Don't let the name of this crime, involuntary deviate sexual intercourse mislead you. It is immaterial to the charge of involuntary deviate sexual intercourse with a child under 16 that the child did not object or resist or even that the child consented. When a child is under 16, the law treats deviate sexual intercourse as involuntary, even if the child is a willing partner.

N.T. at pp. 710, 715-16, 720-21.

The Superior Court dismissed the claim on its merits finding that counsel was not ineffective for failing to object because "the trial court did not need to charge the jury that it was required to determine, beyond a reasonable doubt, the exact date that the incidents occurred where the jury was instructed that, for purposes of the charged offenses, it did need to find that victims were under the age of sixteen when considering the IDSI offenses." Superior Court Opinion, 7/07/2017, at p. 5 (ECF 22-1 at p. 1008).

The only question then for this Court is whether the Pennsylvania Superior Court unreasonably applied the *Strickland* standard or otherwise based its decision upon an unreasonable factual determination. Under the unreasonable applicable provision of 28 U.S.C. § 2254(d), "the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to [Petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision evaluated

objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*." *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

To prevail on a claim that the state court adjudicated on the merits, Petitioner must show that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold"). Petitioner has not met that high threshold. Viewing the Superior Court's disposition of this claim through the deferential lens of AEDPA, the Court has no hesitancy in concluding that Petitioner has failed to carry his burden to persuade this Court that the Superior Court's disposition was unreasonable, yet alone incorrect. For this reason, Petitioner's eighth sub-claim of ineffective assistance of trial counsel will be denied.

i.     In Petitioner's ninth and final sub-claim, he asserts that Attorney Collins engaged in misconduct. He first argues that Attorney Collins improperly transferred the case to Attorney Allman rather than filing a motion to withdraw. This claim was raised on collateral review and adjudicated on its merits by the Superior Court. The claim, therefore, will be reviewed under the deferential standard of review under AEDPA. *See* 28 U.S.C. § 2254(d).

In evaluating counsel's performance in accordance with *Strickland,* the trial court noted:

> In order to sustain a claim for ineffective assistance, the Defendant would have to establish that had Attorney Collins filed a formal Motion to Withdraw, rather than simply transferring the case to another attorney, the result would have been different. The Defendant fails to establish that this Court would have even granted the Motion to Withdraw, let alone the remaining elements of this ineffectiveness claim. It is not this Court's practice to allow defendants to serially request new attorneys for reasons of irreconcilable differences (which in this case appeared to be the Defendant's personal conflict with Attorney Collins and not an

> error or omission on her part), and this Court can say with certainty that had such a Motion been presented, this Court would have denied it. Thus, Attorney Collins' actions in transferring the case to Attorney Allman in her office actually resulted in the Defendant getting the relief he wanted (a new attorney), which he would otherwise not have been able to do. For her part, Attorney Allman in performed ably and well at trial and the Defendant's rights and interests were well-represented (and indeed, the Defendant was pleased with her services up until the guilty verdict). Whatever the dispute between the Defendant and Attorney Collins, it did not impede the Defendant's right to a fair trial and to effective counsel in Attorney Allman. This claim is meritless.

PCRA Opinion, 10/13/2016, at pp. 5-6. (ECF 22-1 at pp. 784-85). The Superior Court denied the claim on its merits, explaining that:

> [T]o the extent that Weimer alleges that Attorney Collins was ineffective in failing to file a motion to withdraw, we note that Weimer suffered no prejudice from this alleged misstep, where the trial court specifically concluded that it would not have granted such motion and where Attorney Allman adequately represented Weimer at trial.

*Commonwealth v. Weimer*, No. 1042 WDA 2016, slip. op. at p. 5 (Pa. Super Ct. July 7, 2017) (ECF 22-1 at p. 1008). The Court finds that Petitioner has not met the high threshold to overcome the AEDPA deferential standard. Viewing the Superior Court's disposition of this claim through the deferential lens of AEDPA, the Court has no hesitancy in concluding that Petitioner has failed to carry his burden to persuade this Court that the Superior Court's disposition was unreasonable, yet alone incorrect. For this reason, this subclaim will be denied.

Next, Petitioner asserts that Attorney Collins engaged in misconduct "based upon counsel [] potentially disclosing confidential information regarding Weimer to the prosecution." Amended Pet. at ¶ 66. In support of this claim, Petitioner relies on letters written by people who attended his trial and observed Attorney Collins sitting near the district attorney, the state trooper, or a family member of one of the victims. This claim has not been fully presented to the state courts. As with Petitioner's other procedurally defaulted claims, in the interest of judicial economy, the Court will undertake a de novo review of the claim.

The Court finds that Petitioner's allegation of attorney misconduct by Attorney Collins is unsupported as allegations based on observations are far from sufficient to support this serious accusation.  Petitioner has presented bald, unsupported statements and, as such, has failed to meet his burden under *Strickland*.  This subclaim will be denied.  To the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim.  *Sanders*, 165 F.3d at 253.

For all these reasons, Petitioner's ninth sub-claim of ineffective assistance of trial counsel will be denied.

### 2.      Sentencing Counsel

Next, Petitioner asserts sentencing counsel was ineffective.  He argues that counsel was ineffective "for not objecting to dated information within the report which resulted in Weimer being sentenced at the aggravated range." Amended. Pet. at ¶ 60 (ECF 20 at p. 30). This claim has not been fully presented to the state courts.  As with Petitioner's other procedurally defaulted claims, in the interest of judicial economy, the Court will undertake a de novo review of the claim.

After a de novo review, the Court finds that Petitioner has failed to meet his burden under *Strickland*.  Pennsylvania law permits a sentencing court to consider relevant facts about a defendant's character and history. *Commonwealth v. Schrader*, 141 A.3d 558 (Pa. Super. Ct. 2016) (holding that a sentencing court can consider even unprosecuted criminal conduct). At the sentencing hearing, the court listed numerous reasons for imposing the sentence in the aggravated range:

> All right, Mr. Weimer.  I listened to you and I find it interesting that your first arrest for a sexual offense was 29 years ago when you were a juvenile.  And although it [did] not result in a conviction, during the course of your life, you have been arrested a number of times and almost all of the arrests and/or convictions involved supplying alcohol to young men and then taking advantage of them to some extent. I believe that you prey on children that ae young and vulnerable . . .

I believe you got guardianship so you could have even more power over them. I think you took young children that you are sure you can manipulate. There were three people, three young boys that you sexually assaulted over an extended period of time. The impact on the victims is obviously not only in the letters that they have submitted, but in their testimony before us.

I feel that you have continued your party and escalated your pattern of criminal activity. You have already done state time for another charge and that didn't deter you from any criminal activity. I see no evidence of any chance of rehabilitation in your future.

Sent. T., 3/13/12, at pp. 38-40. Petitioner has presented no argument that any "dated" information was the reason for his aggravated sentence. Petitioner's claims of ineffective assistance of sentencing counsel will be denied.

And, again, to the extent that Petitioner asserts that PCRA counsel was ineffective for failing to raise this issue, such a claim fails. Counsel cannot be ineffective for failing to pursue a meritless claim. *Sanders*, 165 F.3d at 253.[26]

### 3.    Direct Appeal Counsel

In this claim, Petitioner asserts that direct appeal counsel provided ineffective assistance of counsel when he "failed or refused to argue," the following: (i) prejudicial joinder of cases based on improper venue; (2) existence in the trial record of potential false testimony by the

---

[26] The Amended Petition also states that "no attorney has challenged the constitutionality of [his SVP] classification."  Amend. Pet. at ¶ 68 (ECF 20 at pp. 30-31). Petitioner does not elaborate or provide any argument other than to state (1) Allan D. Pass, Ph.D. falsely testified at the SVP classification proceeding and (2) the "retroactive application of SORNA's reporting and registration requirements violates the ex-post facto clause of the United States Constitution." *Id*. If Petitioner's challenge is to his SVP designation by the trial court, based on Pennsylvania law, such a claim fails to state a cognizable habeas claim. 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68. And if Petitioner's challenge is based on a federal constitutional claim, he has failed to provide this Court with facts to support this argument. *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("The petition must: (1) specify all grounds for relief available to the petitioner; (2) state the facts supporting each ground . . ."

Commonwealth; (3) the SORNA decision; (4) Petitioner's actual innocence of the criminal charges; and (5) Petitioner's illegal sentence.  Amended Pet. at ¶ 69. (ECF 20 at p. 32).

As the Supreme Court has declared:

> appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.... [I]t is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. *See, e.g.*, *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome").

*Smith v. Robbins*, 528 U.S. 259, 288 (2000). Thus, "[i]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (internal quotation marks omitted). On the other hand,

> if the omitted issue has merit but is not so compelling, [we must assess] the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

*Id*. (citing *Smith,* 528 U.S. at 288).

The Court has already evaluated Petitioner's claims of prejudicial joinder, false testimony, the SORNA decision, and Petitioner's actual innocence of the criminal charges and has determined that each lacks merit.  Since the Court found that none of these claims independently warrant federal habeas relief, it cannot be said that the failure of appellate counsel to raise these issues rises to the level of ineffective assistance of counsel since counsel cannot be ineffective for failing to pursue meritless arguments. *Glass v. Sec'y Pennsylvania Dep't of Corr.*, 726 F. App'x 930, 933 (3d Cir. 2018) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)). Petitioner also asserts that appellate counsel failed to raise an "illegal sentence" claim.  He has, failed, however,

to elaborate or provide any argument.[27]  As a result, this claim is improperly pled.  As the Court cannot evaluate this claim, it will be denied.

And Petitioner has failed to demonstrate he suffered any prejudice due to direct appeal counsel failing to raise these issues. Attorney Coffey raised three issues on appeal: weight of the evidence, the sentences imposed were manifestly excessive, and sufficiency of the evidence.  It is clear from the record that direct appeal counsel raised those claims which he believed to have merit.  "[T]o second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable claim' suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders [v. California,* 386 U.S. 738 (1967)]." *Jones*, 463 U.S. at 754.

For all these reasons, Petitioner's claims of ineffective assistance of direct appeal counsel will be denied. Similarly, to the extent that Petitioner asserts that PCRA counsel was ineffective for failing to challenge direct appeal counsel's stewardship, such a claim fails.  Counsel cannot be ineffective for failing to pursue a meritless claim.  *Sanders*, 165 F.3d at 253.

### 4. PCRA Counsel

In this sub-claim of Ground Three, Petitioner argues that PCRA counsel, Attorney Farrell and Attorney Nightingale (upon remand), failed to raise "meritorious issues," which deprived him of effective assistance of counsel and constitute "constructive abandonment" in violation of his Sixth Amendment right to effective assistance of counsel.  Petitioner has not established that he

---

[27] If Petitioner is arguing that his direct appeal counsel was ineffective for not arguing that his mandatory sentences for IDSI were illegal under *Alleyne*, the Court notes that the Supreme Court's decision in *Alleyne* was issued on June 17, 2013, while his direct appeal was pending.  Petitioner was granted relief on this issue by the Superior Court on collateral review.  The Superior Court noted that because Petitioner's judgment of sentence became final after *Alleyne* was decided, he was entitled to relief.  Superior Court Opinion, 7/7/2017, at p. 6 (ECF 22-1 at p. 1009).

was "constructively abandoned" by either of his PRCA counsel.  And even assuming that counsel had abandoned him, his reliance on *Cronic*'s presumption of prejudice rule is misplaced.  *See* Reply at p. 5 (ECF 24); Mot. Seeking Evidentiary Hearing at p. 7 (ECF 28).  This rule applies only in those limited circumstances when a defendant was abandoned by counsel <u>at trial</u>.  *Davenport*, 215 F. App'x at 182.  It does not apply to post-conviction proceedings.[28]

Further, if Petitioner seeks to raise the ineffective assistance of PCRA counsel as a freestanding claim of habeas relief, such a claim is not cognizable in a federal habeas action. Petitioner did not have a constitutional right to counsel during his PCRA proceeding, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), and for that reason, cannot receive habeas relief on a claim that his PCRA counsel was ineffective. *See* 28 U.S.C. 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings.  Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.")  For these reasons, this freestanding claim of ineffectiveness of PCRA counsel will be denied.

---

[28] In his reply, Petitioner relies on *Bey v. Superintendent Greene SCI*, 856 F.3d 230 (3d Cir. 2017), in support of his argument that he was "constructively denied counsel" and as such *Cronic's* presumption of prejudice rule should apply to his ineffective assistance of counsel claims.  *See* Reply at pp. 5-6 (ECF 24).  This Court notes that *Cronic*'s presumption of prejudice rule was not at issue in the *Bey* case.  Rather, the Court of Appeals found that petitioner had shown both cause <u>and prejudice</u> to overcome the procedural default. *Bey*, 856 F.3d at 244 (stating "we agree with Bey that his PCRA counsel's performance was deficient under *Strickland* and that Bey was prejudiced by PCRA counsel's omission.").

### 1. Attorney Thomas N. Farrell

It is clear from the record that Attorney Farrell raised in the PCRA proceedings those claims which he believed to have merit. Petitioner has failed to convince the Court that the issues raised by Attorney Farrell in the counseled PCRA Amended Petition or on collateral appeal were any less strong than the issues Petitioner contends PCRA counsel should have raised but did not. To this point, Petitioner was granted relief by the Superior Court on two of the claims raised by Attorney Farrell, which led to the case being remanded for resentencing.

Attorney Farrell did not have to raise any and all conceivable claims, including those requested by Petitioner. Rather, he was charged with exercising his professional judgment in deciding whether Petitioner had any colorable claims for PCRA relief. Counsel also had an obligation under Rule 3.1 of Pennsylvania's Rules of Professional Conduct not to raise frivolous claims. *See, e.g.*, *Commonwealth v. Chmiel*, 30 A.3d 111, 1190-91 (Pa. 2011).

Petitioner has also failed to make a showing that, had PCRA counsel raised other issues of trial counsel's alleged ineffectiveness, there was a reasonable likelihood that the result of the PCRA proceedings would have been different. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (a petitioner must show a reasonable probability that but for appellate counsel's unreasonable failure to raise issues, he would have prevailed on his appeal). Thus, Petitioner's ineffective assistance of counsel claims challenging Attorney Farrell's representation will be denied.

### 2. Attorney Patrick K. Nightingale

Like his claims challenging Attorney Farrell's representation, Petitioner argues that Attorney Nightingale,

> totally ignored or failed to raise any issue abandoned or neglected by each of Weimer's prior counsel. A cursory review of the Superior Court decision also pointedly leads to the conclusion that Weimer was abandoned on his last appeal as

> Nightingale failure to preserve grounds for the sole issue of excessive sentence were not properly preserved thus resulting in waiver.

Amended Pet. at ¶88 (ECF 20 at p. 40). The Court agrees with Respondents that Petitioner has failed to provide this Court with facts to support this argument. *See* Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("The petition must: (1) specify all grounds for relief available to the petitioner; (2) state the facts supporting each ground . . .").

To the extent that Petitioner is arguing that Attorney Nightingale failed to raise claims he requested, like Attorney Farrell, Attorney Nightingale did not have to raise any and all conceivable claims, including those requested by Petitioner. Rather, he was charged with exercising his professional judgment in deciding whether Petitioner had any colorable claims for PCRA relief. Petitioner's claims that he was abandoned on his last appeal lack merit.

If Petitioner is asking this Court to review his "excessive sentence claim," such a claim provides no ground for federal habeas relief. Sentencing is generally considered a matter of state criminal procedure, which does not fall within the purview of the federal habeas corpus. *U.S. ex rel. Jackson v. Myers*, 374 F.2d 707, 711 n.11 (3d Cir. 1967) (the severity of a defendant's sentence alone does not constitute any grounds for federal habeas relief). Pennsylvania state law vests trial courts with the discretion to impose consecutive or concurrent sentences as required by the facts of the case. *See Commonwealth v. Rickabaugh*, 706 A.2d 826, 847 (Pa. Super. Ct. 1997), *appeal denied*, 736 A.2d 603 (Pa. 1999). And, "[a]bsent some constitutional violation, it is clear that, particularly in the area of state sentencing guidelines, federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure." *Knight v. Beyer*, No. 18-3180, 1989 WL 68618, *8 (E.D. Pa. June 22, 1989) (citing *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988)). A federal court, therefore, will not reevaluate a sentence in a habeas corpus proceeding unless it exceeds the statutory limits. *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40 (3d Cir.

1984).  Petitioner has not alleged that his sentences violate any federal constitutional rights or exceed the statutory limits; he argues that the sentences are "manifestly excessive" under the advisory state guidelines.

For all these reasons, this ground for relief will be denied.

### D.    **Ground Four - Cumulative Error**

Petitioner's final claim is comprised of one sentence, "[t]he cumulative impact of numerous trial and appeal errors makes the determination of guilty inherently unconstitutional."  Amended Pet. at p. 46 (ECF 20).  Petitioner has provided no facts to support his vague and general allegation of "cumulative error."  Without particularized facts from which any specific "errors" can be addressed, individually or cumulatively, the issue as stated in the Amended Petition is incapable of meaningful response or review.  *See Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987).  But to the extent that the "cumulative impact of numerous trial and appeal errors" encompasses the claims that have been extensively reviewed by this Court, this Court finds the claim has no merit.

To have a "cumulative" effect, the court must find that multiple errors were committed. As explained in this Memorandum Opinion, the Court has found no errors were committed.  Thus, there are "no errors to bundle."  *Pursell v. Horn*, 187 F. Supp.2d 260, 363 (W.D. Pa. 2002).  This claim will be denied as Petitioner as failed to show that he was prejudiced by the alleged "cumulative impact of numerous trial and appeal errors."

## VI.    **The Request for Evidentiary Hearing (ECF 28)**

Petitioner requests an evidentiary hearing as to Petitioner's ability to establish cause to excuse a procedural default.  The Court of Appeals for the Third Circuit has held that "it is within a District Court's authority to grant a hearing on a petitioner's ability to establish cause to excuse

a procedural default, and therefore § 2254(e)(2) is inapplicable to those hearings." *Holloway v. Horn,* 355 F.3d 70, 717 (3d Cir. 2004) (citing *Cristin v. Brenan*, 281 F.3d 404, 412-13 (3d Cir.), *cert. denied*, 537 U.S. 897 (2002).

The Court determines that because it has reviewed each procedural claim under a de novo standard, there is no need for an evidentiary hearing to establish cause to excuse any procedurally defaulted claim. The request for an evidentiary hearing, therefore, will be denied.

## VII.   Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.   Applying those standards here, jurists of reason would not find it

53

debatable whether each of Petitioner's claims should be denied.  The Court, therefore, will not issue a certificate of appealability on any of Petitioner's claims.

## VIII.   Conclusion

In closing, this is not a case in which Petitioner's conviction results from constitutional prejudicial and erroneous trial court rulings or incompetent or ineffective counsel.  Instead, Petitioner's incarceration results from a jury verdict based on compelling evidence against him. The Court will deny each of Petitioner's habeas claims and will deny a certificate of appealability with respect to each claim.  An appropriate order follows.

DATED: April 29, 2022                                   BY THE COURT:


                                                        /s/ Patricia L. Dodge
                                                        Patricia L. Dodge
                                                        United States Magistrate Judge


cc:      All Counsel of Record
         (ECF electronic notification)